**UNITED STATES DISTRICT COURT**                **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CASE NO. 1:18-CR-80(1) |
| | § | |
| JULIANA ELAINE LOURDE | § | |

**MEMORANDUM AND ORDER**

Pending before the court is Defendant Juliana Elaine Lourde's ("Lourde") *pro se* Motion for Sentence Reduction Under First Step Act Section 603(B) Based on Extraordinary and Compelling Reasons (#111). While not entirely clear, Lourde appears to claim that she is entitled to a sentence reduction based on the enactment of the First Step Act, her "unusually long sentence" for conspiracy to possess with intent to distribute 50 grams or more of methamphetamine (actual) as opposed to a mixture or substance containing a detectable amount of methamphetamine, and her rehabilitation in prison. The Government filed a Response in opposition to her motion (#118). United States Probation and Pretrial Services ("Probation") conducted an investigation and recommends that the court deny the motion. Having considered the motion, the Government's response, Probation's recommendation, and the applicable law, the court is of the opinion that the motion is without merit.

I.    Background

On February 6, 2019, Lourde pleaded guilty pursuant to a binding plea agreement to Count 4 of the First Superseding Indictment, charging her with Conspiracy to Possess with Intent to Distribute 50 Grams or More of Methamphetamine (Actual), in violation of 21 U.S.C. § 841(b)(1)(A), and to Count 8, charging her with Use and Carry of a Firearm During and in Relation to a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c). On July 9, 2019, the

court sentenced Lourde to 180 months' imprisonment on Count 4 and 60 months' imprisonment on Count 8, to be served consecutively, followed by a 5-year term of supervised release. Lourde previously filed a *pro se* motion for compassionate release on August 14, 2020 (#101) based primarily on the COVID-19 pandemic, which was denied on September 1, 2020 (#102). She is currently housed at Federal Medical Center Carswell, located in Fort Worth, Texas ("FMC Carswell"). Lourde's projected release date is September 28, 2035.

II.    Analysis

A.    Controlling Law

A judgment of conviction that imposes a sentence of imprisonment is a "'final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)); *see* 18 U.S.C. § 3582(c). Section 3582(c)(1)(A) embodies a rare exception to a conviction's finality. This statute gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment. The First Step Act of 2018 ("the Act"), Pub. L. No. 115-391, 132 Stat. 5194, in part, amended 18 U.S.C. § 3582(c)(1)(A), which currently provides:

> (A) the court, upon motion of the Director of the Bureau of Prisons [("BOP")], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term

of imprisonment), after considering the factors set forth in section 3553(a)[1] to the extent that they are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a reduction; or

(ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). This provision is commonly referred to as "compassionate release." *See, e.g.*, *United States v. Escajeda*, 58 F.4th 184, 186 (5th Cir. 2023) ("We often refer to this as 'compassionate release' because courts generally use it for prisoners with severe medical exigencies or infirmities.").

Rather than define "extraordinary and compelling reasons," Congress elected to delegate its authority to the United States Sentencing Commission ("Commission"). *See* 28 U.S.C. § 994(t) (directing the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"); *United States v. Jean*, 108 F.4th 275, 278 (5th Cir. 2024), *abrogated on other*

---

[1] Section 3553(a) directs courts to consider: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") provisions and policy statements; any pertinent policy statement of the United States Sentencing Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

grounds by *United States v. Austin*, 125 F.4th 688, 692 (5th Cir. 2025); *United States v. Jackson*, 27 F.4th 1088, 1090 (5th Cir. 2022); *United States v. Cooper*, 996 F.3d 283, 287 (5th Cir. 2021); *United States v. Shkambi*, 993 F.3d 388, 392 (5th Cir. 2021). Although the Commission had issued a policy statement prior to the passage of the Act that described the reasons that qualify as extraordinary and compelling, that policy statement referenced only those motions filed by the Director of the BOP—thus, the United States Court of Appeals for the Fifth Circuit and other courts held that it was inapplicable to motions filed by defendants on their own behalf. *See Jackson*, 27 F.4th at 1090; *Cooper*, 996 F.3d at 287-88; *Shkambi*, 993 F.3d at 392.

Effective November 1, 2023, the Commission—responding to, among other things, the Act—amended the Guidelines to extend the applicability of the policy statement set forth in U.S.S.G. § 1B1.13 to defendant-filed motions and to broaden the scope of what qualifies as "extraordinary and compelling" reasons potentially warranting compassionate release. *See* U.S.S.G. § 1B1.13. Section 1B1.13(b), as amended, identifies six categories of circumstances that may qualify as "extraordinary and compelling." *Id*. § 1B1.13(b). These categories are: (1) the medical circumstances of the defendant; (2) the age of the defendant; (3) the family circumstances of the defendant; (4) whether the defendant was a victim of abuse while in custody; (5) other reasons similar in gravity to those previously described; and (6) an unusually long sentence. *Id*. § 1B1.13(b)(1)-(6). The Fifth Circuit has clarified, however, that "prisoners have extraordinary and compelling reasons for relief 'only when they face some extraordinarily severe exigency, not foreseeable at the time of sentencing, and unique to the life of the prisoner.'" *Austin*, 125 F.4th at 692 (quoting *Escajeda*, 58 F.4th at 186).

4

As a result, a prisoner seeking compassionate release on her own motion must satisfy the following hurdles:

(1)    the defendant must have exhausted her administrative remedies;

(2)    "extraordinary and compelling reasons" must justify the reduction of her sentence or she must satisfy the requirements of § 3582(c)(1)(A)(ii);

(3)    the reduction must be consistent with the Commission's applicable policy statements; and

(4)    the defendant must convince the court to exercise its discretion to grant the motion after considering the § 3553(a) factors.

*See Jackson*, 27 F.4th at 1089; *Shkambi*, 993 F.3d at 392; *accord United States v. Rollins*, 53 F.4th 353, 358 (5th Cir. 2022); *see Austin*, 125 F.4th at 692.

B.    Exhaustion of Administrative Remedies

Section 3582(c)(1)(A)'s plain language makes it clear that the court may not grant a defendant's motion for compassionate release or sentence reduction unless the defendant has complied with the administrative exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A); *United States v. Garrett*, 15 F.4th 335, 337 (5th Cir. 2021) ("[T]o file a proper motion for compassionate release in the district court, a prisoner must first exhaust the available administrative avenues."); *United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020) (holding that the statutory requirement that a defendant file a request with the BOP before filing a motion for compassionate release in federal court "is *not* jurisdictional, but that it *is* mandatory"). The exhaustion requirement applies whether the motion is styled as one for compassionate release or merely for a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A). Accordingly, before seeking relief from the court, a defendant must first submit a request to the warden of her facility to move for compassionate release on her behalf and then either exhaust her administrative remedies or wait for the lapse of 30 days after

5

the warden received the request.  18 U.S.C. § 3582(c)(1)(A); *Garrett*, 15 F.4th at 338 ("[A]n inmate has two routes by which he may exhaust his administrative remedies.  Both begin with 'requesting that the [BOP] bring a motion on the defendant's behalf.'" (quoting *Franco*, 973 F.3d at 467)).

Although this requirement is said to be mandatory, the Fifth Circuit has treated it as "a nonjurisdictional claim-processing rule." *Franco*, 973 F.3d at 468.  "Mandatory but nonjurisdictional procedural filing requirements may be waived." *United States v. McLean*, Nos. 21-40015, 21-40017, 2022 WL 44618, at *1 (5th Cir. Jan. 5, 2022); *see United States v. Harden*, No. 4:11-CR-127-SDJ, 2025 WL 562716, at *5 (E.D. Tex. Feb. 20, 2025).  Therefore, if the Government fails to "invoke § 3582(c)(1)(A)'s exhaustion requirement as a basis for denying relief," that argument is deemed waived.  *Id.*

A defendant's motion for compassionate release must be based on the same circumstances as those raised in her request for release to the warden of the facility where she is housed.  *United States v. Dodd*, No. 4:13-CR-182-SDJ, 2020 WL 7396527, at *2 (E.D. Tex. Dec. 17, 2020) (stating that "[i]n order to exhaust her administrative remedies, a prisoner must first present to the BOP the same grounds warranting release that the prisoner urges in her motion"); *accord United States v. Thomas*, No. 4:19-CR-28-SDJ, 2023 WL 5279457, at *5 (E.D. Tex. Aug. 16, 2023) (citing *United States v. Mendoza-Garibay*, No. 4:13-CR-00281, 2023 WL 307459, at *1 (E.D. Tex. Jan. 18, 2023)).  Hence, the facts asserted in an inmate's request to the warden and in her motion for compassionate release must be consistent.  *United States v. Scott*, No. CR 17-114, 2024 WL 2187849, at *2 (E.D. La. May 14, 2024); *see United States v. Gonzalez*, 849 F. App'x 116, 117 (5th Cir. 2021).  Further, "the exhaustion requirement applies to new arguments or

grounds for compassionate release developed after an earlier request for compassionate release." *United States v. Cantu*, No. 7:17-cr-01046-2, 2022 WL 90853, at *1 (S.D. Tex. Jan. 5, 2022) (citing *United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020)); *accord Mendoza-Garibay*, 2023 WL 307459, at *2.

Here, Lourde appears to have exhausted her administrative remedies, at least in part. On October 16, 2024, Lourde submitted a request for a reduction in sentence to Warden T. Rule, the warden of the facility where she is housed. In her request, she stated: "The First Step Act Section 603 affords me this last attempt to seek your compassion as it relates to my purity increase base offense level where there is no empirical basis for the sentencing commission's 10 to 1 weight disparity between actual methamphetamine and methamphetamine mixture." On November 21, 2024, Warden Rule denied her request. Thus, Lourde exhausted her administrative remedies with respect to her claim regarding an alleged sentencing disparity between actual methamphetamine and a methamphetamine mixture, but she did not seek relief from the warden based on her alleged rehabilitation. Nonetheless, even if there is some question as to proper exhaustion, if the Government does not invoke § 3582(c)(1)(A)'s exhaustion requirement as a basis for denying relief, it has waived any nonjurisdictional, procedural filing requirement. *See McLean*, 2022 WL 44618, at *1 (holding that it is an abuse of discretion for the district court to deny a motion for compassionate release based on a purported failure to comply with § 3582(c)(1)(A)'s exhaustion requirement when the Government did not raise exhaustion). Here, the Government did not raise lack of exhaustion regarding her rehabilitation claim and, in fact, addressed the rehabilitation issue in its Response. Nevertheless, although Lourde may have complied with the exhaustion requirement before filing her motion for sentence reduction, nothing in the motion indicates that

7

extraordinary and compelling reasons exist to release her from confinement or reduce her sentence of imprisonment.

     C.   <u>Unusually Long Sentence</u>

Lourde contends that she should be released because she received an unusually long sentence due to the purity of the methamphetamine she conspired to possess with the intent to distribute—1.88 kilograms of methamphetamine (actual). She contends that her calculated base offense level of 36 for the possession of at least 1.5 kilograms but less than 4.5 kilograms of methamphetamine (actual) would have been a base offense level of 32 for the possession of at least 1.5 kilograms but less than 5 kilograms of methamphetamine if the purity had not been considered and the substance had been deemed a mixture or substance containing a detectable amount of methamphetamine. After adding a 2-level increase for Lourde's maintaining a premises for the purpose of distributing a controlled substance and subtracting 3 levels for acceptance of responsibility, this would have resulted in a base offense level of 31 with a sentencing range of 108-135 months rather than a base offense level of 35 with a sentencing range of 168-210 months, the sentencing range applied in the case at bar.

Section 1B1.13(b)(6) provides:

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6). A limitation on considering changes in the law is contained in 1B1.13(c) of the Sentencing Guidelines, which provides:

LIMITATION ON CHANGES IN LAW.—Except as provided in subsection (b)(6), a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement. However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction.

U.S.S.G. § 1B1.13(c).

In order to meet the requirements of the Unusually Long Sentence provision of U.S.S.G. § 1B1.13(b)(6), Lourde must satisfy three requirements. First, the defendant must be serving an unusually long sentence. U.S.S.G. § 1B1.13(b)(6). Although Lourde contends that the sentence she received for the methamphetamine-trafficking count, 180 months, is unusually long, she seems to overlook the fact that it was 30 months less than the top of the Guidelines, 210 months, and it was enhanced due to her maintaining a premises for the purpose of distributing the drug, unrelated to its purity. Lourde's total sentence of 240 months was imposed because she also pleaded guilty to using and carrying a firearm during and in relation to a drug trafficking crime. Second, to satisfy the requirements of U.S.S.G § 1B1.13(b)(6), the defendant must have served at least ten years of that sentence. *Id*. Lourde has not fulfilled this requirement. As of today, Lourde has served less than seven years of her sentence.

Third, there must have been a change in the law that "produce[s] a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed." *Id*. This section explicitly excludes the consideration of non-retroactive changes "to the Guidelines Manual." *Id*. In the Fifth Circuit, controlling precedent precludes the court's consideration of non-retroactive changes in *any* law. *See Austin*, 125 F.4th at 692 ("A non-

retroactive change in the law cannot constitute an extraordinary and compelling reason justifying sentence reduction under § 3582(c)(1)."); *Escajeda*, 58 F.4th at 187 (holding that "a prisoner cannot use § 3582(c) to challenge the legality or the duration of his sentence").  Similarly, the Courts of Appeals for the Third, Sixth, and Seventh Circuits have held that when Congress makes a change in the law non-retroactive, such change cannot serve as an extraordinary and compelling reason warranting compassionate release.  *United States v. Bricker*, No. 24-3286, 2025 WL 1166016, at *17 (6th Cir. Apr. 22, 2025); *United States v. Black*, 131 F.4th 542, 546 (7th Cir. 2025); *United States v. Rutherford*, 120 F.4th 360, 377-78 (3d Cir. 2024).  Lourde, however, has not pointed to the change in any law, either retroactive or non-retroactive, that impacts the sentencing calculations in this case.

If Lourde were sentenced today in 2025 for engaging in a conspiracy to distribute the same quantity of methamphetamine, 1.88 kilograms of methamphetamine (actual), the same Guidelines range would apply under U.S.S.G. §§ 2D1.1(a)(5) and (c)(2).  Lourde would still be at Level 36, which applies to at least 1.5 kilograms but less than 4.5 kilograms of methamphetamine (actual), which would then be increased to Level 38 due to her maintaining a premises for the purpose of manufacturing or distributing the drug.  After being accorded a 3-level reduction for acceptance of responsibility, Lourde's total offense level for the drug offense would be Level 35, just as it was in 2019.  With a criminal history category of I, the sentencing range for her methamphetamine trafficking offense would remain 168 to 210 months of imprisonment.  Moreover, as pointed out above, Lourde has not yet served ten years of her sentence.  Hence, the Unusually Long Sentence criteria for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A) are not satisfied in this case.

10

Therefore, Lourde has not demonstrated an extraordinary and compelling reason for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A).  As the Government points out, "there is nothing 'extraordinary' about leaving untouched the exact penalties that Congress prescribed and that a district court imposed for particular violations of a statute."  *United States v. Thacker*, 4 F.4th 569, 574 (7th Cir. 2021) (citing *United States v. Maumau*, 993 F.3d 821, 838 (10th Cir. 2021)).  In *Thacker*, the Seventh Circuit expressed concerns about allowing § 3582(c)(1)(A) to serve as the authority for relief used by inmates "requesting a sentencing reduction in the name of compassionate release on the basis that the prescribed sentence is too long, rests on a misguided view of the purposes of sentencing, reflects an outdated legislative choice by Congress, and the like."  *Id.*  The court declared that "[r]ationales along those lines cannot supply an extraordinary and compelling reason to reduce a lawful sentence whose term Congress enacted, and the President signed, into law.  Any other conclusion offends principles of separation of powers."  *Id.*

While Lourde has not shown that there is any change in the law that affects the calcuation of her sentence, she "request[s] that the court address the issue of the guidelines provisions regarding methamphetamine purity."  She states that "Drug Quantity table weights [sic] methamphetamine (actual) ten times more heavily than methamphetamine for the purposes of calculating the base offense level under Section 2D1.1."  Some courts have observed that there is no empirical basis for the Sentencing Commission's 10-to-1 weight disparity between actual methamphetamine and a methamphetamine mixture and have criticized an assumed connection between drug purity and the offender's role, declining to apply the applicable Guidelines range at sentencing in favor of a lesser sentence.  *See United States v. Robinson*, No. 3:21-CR-14-CWR-FKB-2, 2022 WL 17904534, at *2-3 (S.D. Miss. Dec. 23, 2022) (citing *United States v.*

*Nawanna*, 321 F. Supp. 3d 943 (N.D. Iowa 2018)).  The Sentencing Commission, however, has convened on multiple occasions since this issue was first raised and has declined to make any changes to the Guidelines regarding methamphetamine and methamphetamine (actual).  *See id.*, at *2.

Moreover, although Drug Enforcement Administration data reflect that much of the methamphetamine seized today in the United States is relatively pure, that is not always the case in remote or rural areas where methamphetamine is produced locally with more rudimentary equipment and supplies rather than in laboratories in Mexico or elsewhere.  Further, in some instances, the methamphetamine is pressed into pills with other drugs or cutting agents, resulting in a lesser purity level but a different method of delivery.  In addition, methamphetamine with a high purity level can be sold to persons in the distribution chain who add cutting agents or other dilutants to produce a greater quantity of methamphetamine for subsequent sale down the chain thereby increasing their profit but reducing the purity of the methamphetamine.  Hence, methamphetamine with a higher purity level is of greater value to a drug trafficker due to the potential for increased output and an expanded market.  In any event, it does not seem unreasonable to impose sentences based on actual quantities of methamphetamine involved in an offense in contrast to diluted quantities that exist in a mixture in view of the harmful effects and addictive qualities of methamphetamine on users of the drug.

In the context of motions brought under 18 U.S.C. § 3582(c)(1)(A), numerous courts within this circuit have rejected the argument that the Guidelines' methamphetamine purity distinction constitutes an extraordinary and compelling reason for a sentence reduction.  *See United States v. Villa*, No. 3:12-CR-00320-N-14, 2025 WL 746518, at *4 (N.D. Tex. Mar. 7,

2025) ("[Defendant] is not entitled to compassionate release on the argument that the guidelines distinction between actual methamphetamine and methamphetamine mixtures is unjust."); *United States v. Aaron*, No. 4:18-CR-46-SDJ, 2025 WL 696965, at *5 (E.D. Tex. Mar. 4, 2025) (rejecting an inmate's request for the court to recalculate her base offense level to remove the distinction between methamphetamine actual and mixture); *United States v. Stewart*, No. 5:12-CR-00257, 2024 WL 3277380, at *3 (W.D. La. July 1, 2024) (holding that defendant's purity argument falls within the province of a direct appeal or a § 2255 motion, and, in any event, "the guideline's purity distinction does not constitute an extraordinary and compelling reason for a sentence reduction"), *appeal dismissed*, No. 24-30455, 2024 WL 5323487 (5th Cir. Aug. 27, 2024); *United States v. Bradley*, No. 1:17cr9-HSO-RHW-1, 2024 WL 625313, at * 2-3 (S.D. Miss. Feb. 14, 2024) (rejecting a motion for compassionate release based on the distinction between actual methamphetamine versus a mixture and observing that sentencing is the more appropriate stage to consider such policy disagreements with the Guidelines), *appeal dismissed*, No. 24-60102, 2024 WL 3967504 (5th Cir. June 20, 2024).  As the court commented when denying a motion for sentence reduction based on the alleged disparity created by focusing on the purity of the methamphetamine involved in an offense:

> [T]o now find that such policy disagreement creates an "extraordinary and compelling" reason for early release, the Court would likely open the flood gates to effectually resentence each defendant who had been sentenced by a judge who utilized the sentencing guidelines as written at sentencing.  It is better that consideration of such disparity be taken at the time of sentencing.

*United States v. Rodriguez-Flores*, No. 2:05-CR-21-KS-MTP, 2023 WL 4306755, at *4 n.10 (S.D. Miss. June 30, 2023), *aff'd*, No. 23-60382, 2023 WL 8712047 (5th Cir. Dec. 18, 2023).  In addition, while both the Supreme Court and the Fifth Circuit have affirmed sentences based on

policy-based disagreements with Guidelines ranges when the court deems the resulting sentence would be inconsistent with the purposes of 18 U.S.C. § 3553(a), this is not such a case.  *See Kimbrough v. United States*, 552 U.S. 85, 101 (2007); *United States v. Valdez*, 268 F. App'x 293, 297 (5th Cir. 2008); *see also Spears v. United States*, 555 U.S. 261, 264 (2009) (per curiam).

     D.    <u>Rehabilitation</u>

Lourde maintains that her post-sentence rehabilitation, as evidenced by her maintaining a job throughout the time she has been incarcerated and the educational classes she has taken, establishes extraordinary and compelling reasons for a sentence reduction or compassionate release.  Regarding rehabilitation of the defendant, the Sentencing Guidelines recognize: "Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement.  However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted."  U.S.S.G. § 1B1.13(d); *accord United States v. Martinez*, No. 23-50418, 2024 WL 658952, at *1 (5th Cir. Feb. 16, 2024) ("Even if [the defendant] were reformed, his rehabilitation efforts alone are not an extraordinary and compelling reason for release."); *United States v. Handlon*, No. 23-50386, 2024 WL 111787, at *1 (5th Cir. Jan. 10, 2024) (holding that the defendant's "rehabilitation efforts alone are not an extraordinary and compelling reason for his release").

Hence, while the court may consider rehabilitation efforts, "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."  28 U.S.C. § 994(t); *accord United States v. Rios*, No. 24-673-cr, 2025 WL 841862, at *2 (2d Cir. Mar. 18,

2025); *United States v. Black*, 131 F.4th 542, 544 (7th Cir. 2025); *see United States v. Cordoba*, No. 24010599, 2025 WL 799354, at *1 (5th Cir. Mar. 13, 2025); *Shkambi*, 993 F.3d at 392; *United States v. Hudec*, No. CR 4:91-1-1, 2020 WL 4925675, at *5 (S.D. Tex. Aug. 19, 2020) ("While the Court is permitted to consider post-sentencing rehabilitation in determining whether to grant an eligible defendant a sentence reduction, it is not authorized to grant a reduction based upon post-sentencing rehabilitation alone."). In fact, "[m]aking good use of one's time in prison is not uncommon, and indeed is expected." *United States v. Blanco*, No. 16-CR-408 (CS), 2021 WL 706981, at *2 (S.D.N.Y. Feb. 22, 2021) (quoting *United States v. Alvarez*, No. 89-CR-229, 2020 WL 4904586, at *7 (E.D.N.Y. Aug. 20, 2020)); *see United States v. Alimehmeti*, No. 16-CR-398 (PAE), 2024 WL 4880197, at *8 (S.D.N.Y. Nov. 25, 2024) (recognizing that some amount of rehabilitative effort is expected of inmates and holding that completion of educational courses and doing productive work while incarcerated did not justify early release). Further, "making good use of one's time in prison and regretting one's actions are not grounds for sentence reductions under the First Step Act." *United States v. Polnitz*, No. 17-cr-201-pp, 2020 WL 1139836, at *2 (E.D. Wis. Mar. 9, 2020). Lourde has submitted records showing a variety of educational, health, and fitness programs she has completed while incarcerated in the BOP, accomplishments for which she should be commended. Nevertheless, in *United States v. Comb*, the court found a similar BOP log listing a defendant's participation in rehabilitative programs to be "wholly inadequate" for concluding that the defendant's rehabilitation was "beyond or out of the common order." No. H-13-0575-06, 2025 WL 240954, at *3 (S.D. Tex. Jan. 17, 2025) (quoting *Escajeda*, 58 F.4th at 186), *aff'd*, 2025 WL 603881 (5th Cir. Feb. 25, 2025). Probation

also reports that Lourde incurred a prison disciplinary violation on February 17, 2024, for mail abuse, disrupt monitoring, for which she was sanctioned.

While Lourde has generally maintained a good disciplinary record while incarcerated, other courts have found a similar argument not to constitute an extraordinary and compelling reason for a sentence reduction. *See United States v. Campos*, No. 22-5216, 2022 WL 4298703, at *2 (6th Cir. Aug. 25, 2022) (affirming the denial of compassionate release where the district court found the defendant's disciplinary record with no infractions and rehabilitation "insufficient" in light of his "serious offense," "significant criminal history," and the fact that he "had a substantial amount of his sentence remaining"); *United States v. Parker*, No. 18-CR-138 (JLS), 2023 WL 2806069, at *6 (W.D.N.Y. Apr. 5, 2023) ("[E]ven if [the defendant] lacks a disciplinary record, 'good behavior is not, by itself, a basis to grant compassionate release pursuant to 18 U.S.C. § 3582(c).'" (quoting *United States v. Corin*, No. S7 10 CR 391-64 (CM), 2020 WL 5898703, at *4 (S.D.N.Y. Oct. 5, 2020))); *United States v. Tillman*, No. 13 Cr. 362 (JPC), 2023 WL 355624, at *4 (S.D.N.Y. Jan. 23, 2023) (declining to grant compassionate release despite the defendant's "clean disciplinary record").

Thus, although Lourde lists a number of commendable achievements and laudable goals, she has not presented sufficiently extraordinary and compelling accomplishments or circumstances to merit compassionate release or a sentence reduction under the facts of this case. *See United States v. Lewis*, No. 17-CR-28-FPG, 2021 WL 4519795, at *3 (W.D.N.Y. Oct. 4, 2021) (finding defendant's efforts at rehabilitation and plans to start a new life elsewhere to be commendable and recognizing the unusual burdens he faced in prison but finding those considerations not to undermine the factors that led to his original sentence—his offense, his criminal history, and the

need for deterrence); *see also United States v. Boyd*, No. 3:17-CR-37-TAV-DCP-4, 2021 WL 5094903, at *4 (E.D. Tenn. Nov. 2, 2021) (the court, while recognizing defendant's efforts to improve himself, did not find his rehabilitation efforts to be so extraordinary as to outweigh the other sentencing factors); *United States v. Willsey*, No. 3:00-cr-00438-HZ, 2021 WL 4462889, at *2 (D. Or. Sept. 28, 2021) (although finding defendant's steps toward rehabilitation to be laudable, the court ruled that they did not present an extraordinary circumstance that would justify compassionate release, particularly given the seriousness of his offenses of conviction); *United States v. Rounds*, No. 10-CR-239S (2), 2021 WL 4437170, at *4 (W.D.N.Y. Sept. 28, 2021) (commenting that defendant's efforts at rehabilitating himself were laudable and should be continued, but concluding that they did not alone or in combination with his other arguments constitute an extraordinary and compelling reason for compassionate release). Similarly, the court hopes that Lourde will continue on the path to rehabilitation, but declines to exercise its discretionary authority under § 3582 at this time based on either the length of her sentence, the alleged disparity between sentences imposed for offenses entailing methamphetamine (actual) as opposed to a methamphetamine mixture, or her rehabilitation efforts. *See Lewis*, 2021 WL 4519795, at *3.

      E.    <u>Section 3353(a) Factors</u>

The court further finds that a sentence reduction or compassionate release is not merited in light of the applicable factors set forth in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *United States v. Chavez*, No. 23-50684, 2024 WL 940263, at *1 (5th Cir. Mar. 5, 2024); *Rollins*, 53 F.4th at 358-59; *United States v. Shorter*, 850 F. App'x 327, 328 (5th Cir. 2021) (finding that the

court did not abuse its discretion in denying compassionate release after balancing the § 3553(a) factors); *United States v. Keys*, 846 F. App'x 275, 276 (5th Cir. 2021); *Shkambi*, 993 F.3d at 392; *Thompson*, 984 F.3d at 435 n.11 (collecting cases); *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020).

The nature and circumstances of Lourde's offenses of conviction entail her participating in a drug trafficking conspiracy involving the distribution of 1.88 kilograms of methamphetamine (actual), her maintaining a premises for the purpose of manufacturing or distributing methamphetamine (actual), and her using and carrying firearms during and in relation to a drug trafficking crime. As set forth in her Presentence Investigation Report ("PSR"), agents of the Bureau of Alcohol, Tobacco, Firearms, and Explosives were advised on August 15, 2017, that Lourde was distributing large amounts of methamphetamine in the Beaumont, Texas, area. The PSR reflects that she sold methamphetamine (actual) to a confidential source on four separate occasions in 2017 in the amounts of 54.14 grams (August 22, 2017), 81.33 grams (October 4, 2017), 106.10 grams (October 30, 2017), and 138.26 grams (December 6, 2017). During the transactions, Lourde displayed firearms, consisting of a pistol, a rifle, a shotgun, and a revolver. Lourde admitted to making multiple trips to Houston, Texas, to pick up methamphetamine in order to sell the drugs in Beaumont, Texas. On January 8, 2018, in Chambers County, Texas, Lourde was a passenger in a vehicle that was pulled over for a traffic stop. Officers discovered 1,442.24 grams of methamphetamine (actual) and 2 handguns during the traffic stop. Lourde was handcuffed and placed under arrest; however, she slipped the handcuffs off, jumped into the driver's seat of the trooper's vehicle, and fled the scene. She lost control of the vehicle and slid into a ditch four miles away. On July 18, 2018, in Orange County, Texas, officers discovered

17.10 grams of methamphetamine (actual), a pistol, and drug paraphernalia in the vehicle she was driving during a traffic stop.  On August 21, 2018, Lourde was a passenger in a van in which officers discovered 14.54 grams of methamphetamine (actual) and a loaded pistol.  In addition, Lourde used her residence in Beaumont as a premises for the distribution of a controlled substance, where officers recovered 29.2 grams of methamphetamine (actual), a handgun, and a rifle during the execution of a search warrant.  At sentencing, Lourde had pending charges in Anahuac, Texas, for delivery of a controlled substance, escape while arrested, hindering apprehension, theft of motor vehicle, unlawful carrying a weapon, and possession of marijuana. Lourde also has a long history of poly-substance abuse beginning at age 12, which includes the daily use of methamphetamine.

In support of her motion, Lourde, age 35, concedes that she "made irrational and irresponsible choices to engage in the criminal conduct at issues [sic] here" and that she "deeply regret[s] those decisions and acknowledge[s] that [she] deserve[s] a significant punishment."  She claims, however, that she "deserves a second chance to reclaim [her] life" and is "asking for a second chance to be a mother to [her] children, and law-abiding citizen."  Lourde further asserts that she is "not a threat to public safety."  In closing, Lourde repeats that "the BOP's records indicate that [she] do[es] not present a security risk" and declares that her "offense was non-violent."  She also contends that she "had no significant history of drug abuse and ha[s] not committed any acts of violence while incarcerated."  Courts have long recognized, however, that "continued drug dealing does constitute a danger and threat to the community."  *United States v. Hare*, 873 F.3d 796, 799 (5th Cir. 1989); *accord United States v. Grimaldo*, No. 4:08-cr-107-SDJ, 2022 WL 4126106, at *7 (E.D. Tex. Sept. 9, 2022) (denying compassionate release to

inmate found guilty of participating in a drug trafficking conspiracy involving large amounts of cocaine and marijuana despite his completion of numerous programs and saving his cellmate's life by performing CPR, reasoning that he continues to pose a danger to the community based on the totality of the circumstances); *United States v. Dotrey*, No. 2:13-CR-004, 2021 WL 4191454, at *8 (E.D. Tex. Sept. 15, 2021) (denying compassionate release to drug trafficker despite his insistence that his offense was non-violent, he had been rehabilitated, and he had been rated by the BOP as having a low risk of recidivism). "Although a defendant may not have been convicted of a violent crime, 'that does not make his offense any less serious or dangerous to the community.'" *United States v. Thomas*, No. 14-246, 2021 WL 1721014, at *3 (E.D. La. Apr. 30, 2021) (quoting *United States v. Bailey*, No 17-244, 2020 WL 6701533, at *3 (E.D. La. Nov. 13, 2020) (citing *United States v. Leon*, 766 F.2d 77, 81 (2d Cir. 1985) ("The harm to society caused by narcotics trafficking is encompassed within Congress' definition of 'danger.'"))).

"Compassionate release is discretionary, not mandatory, and may be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)." *Chambliss*, 948 F.3d at 693; *see Rollins*, 53 F.4th at 358-60 (upholding the denial of compassionate release of the defendant, who suffered from a "dire" medical situation stemming from a gunshot wound that required the amputation of his right leg and left him paralyzed, and deferring to the district court's balancing of the § 3553(a) factors, including the defendant's "history, the serious nature of his offense, and the danger his release would pose to the community at-large"); *United States v. Gharib*, No. 21-40779, 2022 WL 1565352, at *1 (5th Cir. May 18, 2022). Where, as here, a prisoner has engaged in "severe" criminal conduct, the district court has discretion to deny compassionate release under the circumstances. *Chambliss*, 948 F.3d at 693-94; *accord Rollins*, 53 F.4th at 358-60; *Gharib*, 2022

WL 1565352, at *1 (refusing to consider the defendant's contention that extraordinary and compelling reasons justified compassionate release due to the defendant's no longer being subject to the career offender enhancement when the district court found that the § 3553(a) factors outweighed granting relief); *Keys*, 846 F. App'x at 276 (rejecting the defendant's argument that the court gave too much weight to his criminal history and finding that "a mere disagreement with the court's balancing of the § 3553(a) factors . . . is not a sufficient ground for reversal").  In view of the nature and circumstances of her offenses of conviction and her history of substance abuse, the court cannot conclude that Lourde's early release from prison would afford adequate deterrence or protect the public, as she continues to pose a danger to other persons and to the community as a whole.

In addition, granting Lourde compassionate release or a sentence reduction would fail to provide just punishment for her offenses or promote respect for the law.  In *Chambliss*, the Fifth Circuit upheld the denial of compassionate release due to the defendant's not yet having served a sufficient portion of his sentence.  948 F.3d at 694.  The district court determined that the defendant's terminal illness "constitute[d] 'an extraordinary and compelling reason for a sentence reduction' and that he '[did] not present a danger upon release,'" but denied release because "releasing [the defendant] after serving only 14 years of a 30-year sentence minimizes both the impact of [the defendant's] crime and seriousness of the offense."  *Id.* at 693-94.  "Moreover, the [district] court, citing the § 3553(a) factors, determined that requiring [the defendant] to serve the remainder of his sentence would 'provide just punishment for the offense' and 'afford adequate deterrence to criminal conduct.'"  *Id.* at 694; *see Rollins*, 53 F.4th at 359-60; *Thompson*, 984 F.3d at 434-35 (observing that the courts that have granted compassionate release "largely have done

so for defendants who had already served the lion's share of their sentences and presented multiple, severe, health concerns"); *accord United States v. Rodriguez*, 27 F.4th 1097, 1100 (5th Cir. 2022).  In the case at bar, releasing Lourde, who is in good health,[2] after she has served only seven years (or approximately one-third) of her 240-month sentence would similarly minimize the impact of her crimes and the seriousness of her offenses as well as fall short of providing just punishment and adequate deterrence to criminal conduct.  On balance, compassionate release is not warranted in light of the applicable factors set forth in § 3553(a).

As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he has behaved when released in the past, and his track record is a poor one."  No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, 447 F. Supp. 3d 399, 403 (D. Md. 2020)).  Here, Lourde's track record is similarly a poor one.  In this instance, there is no reason to believe that she would not revert to her prior drug-dealing and drug-abusing behavior as well as her unlawful possession of firearms if her sentence was reduced and she was released from prison.  *See United States v. Wymer*, 573 F. Supp. 3d 1208, 1212 (N.D. Ohio 2021).  Like the court in *United States v. Lewis*, this court concludes that "Defendant's current term of imprisonment was and remains appropriate."  No. 17-CR-28-FPG, 2021 WL 4519795, at *3 (W.D.N.Y. Oct. 4, 2021).  Lourde committed  serious offenses that justified her sentence, and the circumstances she now identifies do not render that sentence unjust or inequitable.  *See id.*

---

[2] According to Lourde's medical records, she is a Care Level 1 inmate.  Care Level 1 inmates "are less than 70 years of age and are generally healthy.  They may have limited medical needs that can be easily managed by clinician evaluations every 6-12 months."  BOP Clinical Practice Guidance (May 2019).

III.    Conclusion

In sum, Lourde has failed to satisfy her burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere.  The 240-month sentence of imprisonment imposed upon Lourde for her offenses of conviction comports with the 18 U.S.C. § 3553(a) factors, and she has adduced no extraordinary and compelling reasons to lessen her sentence or release her from prison at this time.  Neither the length of her incarceration, the alleged disparity between sentences imposed for methamphetamine (actual) and methamphetamine mixture, nor her efforts at rehabilitation merit a reduction of sentence under these circumstances.  Accordingly, Lourde's *pro se* Motion for Sentence Reduction Under First Step Act Section 603(B) Based on Extraordinary and Compelling Reasons (#111) is DENIED.

SIGNED at Beaumont, Texas, this 21st day of May, 2025.

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE

23